Jonnie Lou Smith, Trustee for Vickie Ann and Bobby Jean Smith, Transferees v. Commissioner.
Smith v. Commissioner
Docket No. 45854.
United States Tax Court
T.C. Memo 1956-213; 1956 Tax Ct. Memo LEXIS 81; 15 T.C.M. (CCH) 1115; T.C.M. (RIA) 56213; September 19, 1956
*81 In 1945, Victor Hugo Smith bought a house and lot situated in Carlton, Georgia, into which his son, Victor, and his family moved. Victor died in 1945. On October 29, 1951, Hugo conveyed the house and lot to his wife, Jonnie Lou Smith, in trust for Victor's two minor children. The fair market value of the house at the time of the conveyance was $5,500. No consideration was paid Hugo for the conveyance. He was insolvent at the time the conveyance was made. Held, Jonnie Lou Smith is liable as trustee-transferee for Hugo's deficiencies and penalties to the extent of $5,500, together with interest thereon as provided by law. James W. Arnold, Esq., Box 508, Athens, Ga., for the petitioner. George W. Calvert, Esq., for the respondent. BLACK Supplemental Memorandum Findings of Fact and Opinion On June 30, 1955, Memorandum Findings of Fact and Opinion was filed in this proceeding. In this Memorandum Findings of Fact and Opinion it was held that petitioner was liable as transferee of the assets of V. Hugo Smith to the extent of $5,500, together with interest thereon as provided by law. Decision to that effect has been entered under Rule 50, November 28, 1955. On *82 October 3, 1955, by leave of the Court granted on September 30, 1955, petitioner's motion for rehearing and reconsideration was filed. It was carefully read and considered. The principal ground urged by petitioner in support of her motion for rehearing was that the Court found that the transferor, V. Hugo Smith, was insolvent on October 29, 1951, whereas if petitioner should be granted the opportunity to do so, on rehearing she would be able to prove that the transferor, V. Hugo Smith, was solvent on October 29, 1951. Such rehearing for which petitioner prayed was granted and it was stated in a memorandum to accompany the order for rehearing that the rehearing would be held for the purposes stated in petitioner's said motion, as follows: "(1) That said case be reopened for the purpose of hearing the evidence only upon the solvency or insolvency of V. Hugo Smith October 29, 1951. "(2) That a rehearing be granted and said case be reconsidered by this Honorable Court upon the one question of the solvency or insolvency of V. Hugo Smith October 29, 1951." The rehearing was held in Atlanta, Georgia, on April 9, 1956, and considerable testimony was heard on the issue of the solvency *83 of V. Hugo Smith, the transferor, on October 29, 1951. We think the evidence heard at this rehearing not only failed to show that we erred in our Memorandum Findings of Fact and Opinion filed on June 30, 1955, wherein we found as a fact that "Hugo has been insolvent since and including October 29, 1951," but the evidence received at the rehearing affirmatively shows that such finding of fact was correct. Findings of Fact In addition to the Findings of Fact contained in our Memorandum Findings of Fact and Opinion filed herein June 30, 1955, to which we still adhere, we find the following facts Hugo Smith, sometimes hereinafter referred to as Hugo, were as follows: Fair
Market
Assets
Value
Cash - Hubert State Bank, Athens, Ga.
$ 85.00
Cash - Rowe Banking Co., Comer, Ga.
1,344.95
Balance in Acct. No. 878490/4 at Courts
& Co., Atlanta, Ga., entitled Victor
Hugo Smith
3,727.67
Real Estate: Home in Carlton, Ga.
4,000.00
Store Building, Carlton, Ga.
3,000.00
Furniture and Fixtures
1,000.00
Merchandise Inventory
4,000.00
722 Shares Affiliated Fund Stock held
by J. W. Arnold in partial secu-
rity for attorney fees
3,000.00
615 Shares Affiliated Fund Stock
2,552.25
30 Shares Atlantic Co. Common
292.50
General Discount Corp. 5% Bonds
None
240 SharesGeneral Discount PFD
Stock
None
Value of House and Lot in Carlton,
Ga., owned by V. Hugo Smith on
October 29, 1951, and on that day
transferred by him to Jonnie Lou
Smith, as trustee
5,500.00
Total Assets
$28,502.37
Liabilities
Note due James J. Smith
$ 9,000.00
Due J. W. Arnold, Attor-
ney
7,000.00
Income tax liability for
1942 to 1946, inclusive: Deficiency in tax
34,016.66
Fraud Penalties
17,002.63
Interest due on deficiency
12,405.37
Total Liabilities
$79,424.66
79,424.66
Excess of Liabilities over Assets
$50,922.29
*84 Victor Hugo Smith, the transferor, was insolvent on October 29, 1951, at the time he executed and delivered to Jonnie Lou Smith in trust for the minor children of Victor Hiram Smith, namely, Vickie Ann Smith and Bobby Jean Smith, the deed to a house and lot of the fair market value of $5,500. The petitioner is liable as transferee for the deficiencies in income tax and penalties due from Victor Hugo Smith, transferor, for the years 1942 to 1946, inclusive, in the amount of $5,500, plus interest thereon as provided by law. Opinion BLACK, Judge: On November 28, 1955, a decision was entered in this proceeding: "that there are liabilities due from this petitioner as transferee of the assets of V. Hugo Smith, Carlton, Georgia, for deficiencies in income tax and penalty for the taxable years 1942 to 1946, inclusive, as follows: "Taxable
Amount of Deficiency
Year
Type of Tax
Tax
50% Penalty
1942
Income
$ 355.30
$224.40
1943
Income
613.80
385.55
& Victory
1944
Income
354.75
405.90
1945
Income
526.35
300.85
1946
Income
1,474.55
858.55 together with interest thereon as provided by law." On January 11, 1956, this decision was *85 vacated and set aside and a rehearing was granted. In substance the rehearing was granted because petitioner represented to the Court in her motion for rehearing that she had misunderstood the effect of her stipulation that V. Hugo Smith was insolvent on December 31, 1951, and that when respondent, at the original hearing in Atlanta, Georgia, on May 31, 1954, introduced evidence to show that Hugo was insolvent on October 29, 1951, petitioner was taken by surprise and that she had not come prepared to offer evidence in rebuttal to such evidence of respondent. Petitioner represented to the Court in her motion that if a rehearing was granted, she would be able to prove that V. Hugo Smith was solvent on October 29, 1951, and that it was between that date and December 31, 1951, of the same year that Hugo became insolvent. Hugo, in his testimony at the rehearing, testified that on October 29, 1951, he was worth between $70,000 and $80,000. Of course, it needs no citation of authority for the proposition that a man's net worth means a total of his assets less a total of his liabilities. If the result of such a computation is that the value of his assets exceeds the amount of his liabilities, *86 then he is solvent. On the other hand, if the amount of his liabilities exceeds the value of his assets, then he is insolvent. In the instant case, even according to petitioner's own brief, the total value of Hugo's assets on October 29, 1951, was $81,830.32, and his total liabilities on that date were $58,489.06. Therefore, these figures claimed by petitioner in her brief, even assuming that they are correct, would give the transferor a net worth on October 29, 1951, of only $23,341.26. Thus, in the face of her own figures, how petitioner can contend that the transferor, V. Hugo Smith, was worth on October 29, 1951, between $70,000 and $80,000 is more than we can see. As a matter of fact, the figures given in petitioner's brief, by which a net worth of $23,341.26 on October 29, 1951 is computed, are clearly erroneous. For example, petitioner lists as assets securities shown on petitioner's Exhibit No. 14 of a value of $48,884. Clearly the transferor did not own on October 29, 1951, all the securities listed on petitioner's Exhibit No. 14. There is no evidence in the record which we regard as trustworthy which shows that on October 29, 1951, Hugo was the owner of the securities listed *87 on petitioner's Exhibit No. 14 and which were listed as having a value on that date of $48,884. If the transferor was the owner of the securities listed on petitioner's Exhibit No. 14, petitioner certainly should have produced more satisfactory evidence of that fact than she did produce. We certainly could make no finding on the kind of evidence which is in the record that on October 29 petitioner was the owner of securities which had a value of $48,884. Hugo testified that he was the owner of such securities on October 29, 1951, but his testimony was so confusing and contradictory that we are unable to credit it as trustworthy. Also petitioner incorrectly lists the liabilities of Hugo on October 29, 1951. She lists in her brief as the first liability of Hugo on that date "(1) For Federal Income Taxes due $42,289.06." That is an erroneous listing. The transferor's liability for taxes, penalties, and interest on October 29, 1951, was as follows: Deficiency in tax
$34,016.66
Fraud penalties
17,002.63
Interest due on deficiency
12,405.37
Total
$63,424.66
It, of course, requires no citation of authority to establish the principle that the debts owing by a transferor *88 include the interest for which he is liable, as well as the principal of the debt. In the instant case, it has been stipulated that the transferor agrees that the amount of the deficiencies determined against him in the total amount of $34,016.66, plus addition of fraud penalties of $17,002.63, are correct. The statute itself imposes interest and clearly the interest which was owing by Hugo on October 29, 1951, was just as much a part of his liabilities on that date as the amounts of the deficiencies and penalties. The figure of $42,289.06 which petitioner lists in her brief as the liability of Hugo for Federal income taxes due by him on October 29, 1951, is after the deduction of $8,030.23 paid by him on December 13, 1951, and an additional payment made by him of $700 in January of 1952. After these payments, in an offer of compromise, were made by Hugo there remained unpaid on the deficiencies and penalties, $42,289.06. Nothing was paid on the interest. All of that remained unpaid and still remains unpaid, so far as the record shows. It is manifest that it is Hugo's liabilities on October 29, 1951, that we are interested in in determining his solvency October 29, 1951, and not *89 those of a later date. And, as stated above, his liability for deficiencies, penalties, and interest on October 29, 1951, totaled $63,424.66, and not the total of $42,289.06, which petitioner uses in her brief. It is true, of course, that the transferor gets credit for the two payments which he made in his offer of compromise and the Commissioner makes no contention to the contrary. What the Commissioner is contending is that these payments have nothing to do with the question of determining the solvency of Hugo on October 29, 1951, and in this contention respondent is clearly correct. After a careful examination of the entire record, we have given a statement in our Findings of Fact of all the assets which Hugo owned on October 29, 1951, and also a statement of the liabilities which he owed on that date. When each of these is totaled, it is clear that Hugo's liabilities were considerably greater than the total assets which he owned at that time. Therefore, on the basis of the evidence, we have found that Hugo was insolvent on October 29, 1951. It is clear that petitioner's contention that Hugo had a net worth on October 29, 1951, of between $70,000 and $80,000 is without merit *90 and there is no trustworthy evidence which sustains it. In our Findings of Fact we have endeavored to include in the list of Hugo's assets everything that he owned on October 29, 1951, as shown by the record. Petitioner lays a great deal of stress on her Exhibit No. 12, which shows that on some date in February 1951, Hugo was the owner of securities which had a value of $74,414.33. No list of his liabilities, including his liability for tax deficiencies and penalties at that time, are included in this exhibit. In the first place, what securities he owned in February 1951 and what liabilities he owed at that time throw but little, if any, light on the issue of Hugo's solvency or insolvency on October 29, 1951. In the next place, respondent introduced the testimony of a witness from Courts and Company which showed clearly that most of the securities which Hugo owned in February 1951 and which were listed on Exhibit No. 12 were sold through Courts and Company prior to October 29, 1951, and that Hugo did not own them on that date. Also the testimony further shows that at the request of Hugo's attorney, Courts and Company on October 25, 1951, delivered to the attorney all the securities *91 which it had in its possession which belonged to Hugo. Exhibit No. 13, which is in the record, shows a complete list of the securities which Courts and Company delivered at that time. In the statement of Hugo's assets and liabilities on October 29, 1951, which we have included in our Findings of Fact, we have included in Hugo's assets the value of the securities which were delivered to his attorney by Courts and Company on October 25, 1951, and of which he was the owner. We have not included the securities owned by others. Therefore, to sum up, the record shows to our satisfaction that Hugo was insolvent on October 29, 1951, at the time he made the transfer of the house and lot to petitioner as trustee, and she is liable as trustee-transferee to the extent determined by respondent in his deficiency notice. The decision which we entered November 28, 1955, and which we vacated and set aside January 11, 1956, will be reentered.